**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jose Luis Arvizu, | No. CV-13-00102-TUC- JAS (BGM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, *et al.*, | |
| Respondents. | |

Currently pending before the Court is Petitioner Jose Luis Arvizu's *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1).   Respondents have filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 15).   Petitioner did not file a Reply.   The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.   The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Tucson Police Department ("TPD") Officer Valerie Berg testified that on November 7, 2006 she was working as an undercover narcotics officer.   Trial Tr. 11/27/2007 (Doc. 15-7) 128:4–134:18.   Officer Berg further testified that she was introduced to Patricia Loya through a confidential informant, and made her first buy directly from Ms. Loya on August 8, 2006.  *Id.* at 132:19–133:3.   Officer Berg testified that on November 7, 2006, she placed a telephone call to Ms. Loya to tell her that she wanted to purchase two ounces of methamphetamine.   *Id.* at 140:8–20, 179:17–24. Officer Berg further testified that she spoke with Ms. Loya and was directed to Ms. Loya's apartment.  *Id.* at 141:14–142:8.   Officer Berg testified that she drove to Ms. Loya's apartment, parked her vehicle, and observed Ms. Loya's daughter, Angélica Ramirez going up the stairs to the second floor balcony.  *Id.*  Officer Berg further testified that Angélica motioned for her to come up to the apartment.  Trial Tr. 11/27/2007 (Doc. 15-7) 143:6–22, 181:4–15.  After Officer Berg went to the apartment, Ms. Loya informed her that they needed to meet the person, so Officer Berg, Ms. Loya, and Angélica returned to Officer Berg's vehicle.  *Id.*  Officer Berg testified that she drove with Ms. Loya and Angélica to an apartment off of Country Club and Fifth Street.  *Id.* at 146:11– 147:10.   During the drive Ms. Loya and Angélica both used Officer Berg's phone to try and contact the source.  *Id.*  Once they were in the apartment parking lot, Angélica used Officer Berg's phone, asked for Jose, and told the person that they were waiting, and hung up.  *Id.* at 151:1–13.   Officer Berg testified that she gave Ms. Loya $2,000.00, $1,800.00 for the drugs and $200 for her.  *Id.* at 151:21–152:16, 184:22–185:17.  Officer

Berg testified that Ms. Loya put the money in her purse, got out of her car and into a Dodge Neon, then returned in less than a minute or minute and a half, and handed Officer Berg three baggies of methamphetamine. *Id.* at 147:24–148:11, 153:16–154:16, 186:10–19. Officer Berg further testified that she had audio and video recording equipment recording the November 7, 2006 encounter with Ms. Loya and Angélica. *Id.* at 144:9–20.

Officer Cardwell, who worked for TPD on November 7, 2006, testified that he was assigned to perform surveillance of undercover Officer Berg and whoever she was meeting with. Trial Tr. 11/27/2007 (Doc. 15-7) 162:8–22. Officer Cardwell testified that he took photographs of the meet at the Country Club Apartments on November 7, 2006. *Id.* at 162:23–163:1. Officer Cardwell further testified regarding photographs from that encounter showing Officer Berg's vehicle, Ms. Loya exiting her vehicle and getting into a Dodge Neon, Ms. Loya returning to Officer Berg's vehicle, and then two male subjects exiting the Dodge Neon after the transaction was completed. *Id.* at 163:2–167:22. Officer Cardwell identified one of the males who exited the Dodge Neon as Defendant Jose Arvizu. *Id.* 167:8–22.

Patricia Loya testified that on November 7, 2006, she accompanied the undercover officer and her daughter Angélica to an apartment complex at Country Club and Speedway to buy drugs from Defendant Jose Arvizu. Trial Tr. 11/28/2007 (Doc. 15-8) 41:7–42:23. Ms. Loya testified that she got out of the undercover officer's vehicle and got in the car with Jose Arvizu and another unknown individual. *Id.* at 43:5–46:25. Ms. Loya testified that she got in the back seat and Jose Arvizu was in the front driver's seat. *Id.* Ms. Loya further testified that she bought drugs from Jose Arvizu that day and had

previously, as well.  *Id.* at 47:1–20.  Ms. Loya testified that the drugs she purchased from Jose Arvizu were to be sold to the undercover officer.  *Id.* at 49:1–50:16.

Drug Enforcement Administration ("DEA") Special Agent ("SA") Richard Kivi testified regarding the wiretap that had been placed on Patricia Loya's cellular telephone. Trial Tr. 11/28/2007 (Docs. 15-8 & 15-9) 103:4–112:12.  SA Kivi testified that initially, he analyzed Ms. Loya's cellular telephone records and obtained a warrant to install a pen register on that line.  Trial Tr. 11/28/2007 (Doc. 15-9) 108:16–109:14.  SA Kivi further testified that there were a significant number of phone calls between Ms. Loya's cellular telephone and the telephone subscribed to by Jose Arvizu.  *Id.*  SA Kivi compared the subscriber account information with Jose Arvizu's motor vehicle records and found a match.  *Id.* at 109:19–110:21.  SA Kivi also testified that the net weight of methamphetamine purchased on November 7, 2006 was 54.4 grams.  *Id.* at 111:7–112:12.

Petitioner was charged with one count of conspiracy to possess for sale, transport for sale, offer to transport for sale, sell, transfer or offer to sell or transfer dangerous drugs and one count of unlawful transport for sale or offer to transport for sale or sell, transfer or offer to sell or transfer a dangerous drug, methamphetamine, in violation of Arizona law.  Trial Tr. 11/28/2007 (Doc. 15-7) 109:23–21; *see also* Answer (Doc. 15), Ariz. Superior Ct., Pima County, Minute Entry 11/29/2007 (Exh. "A") at ¶ 1.   On November 29, 2007, a jury found Petitioner guilty of both counts.  Answer (Doc. 15), Ariz. Superior Ct., Pima County, Minute Entry 11/29/2007 (Exh. "A") at 1–2.   On December 21, 2007, Petitioner was sentenced to the presumptive term of five (5) years

imprisonment for the conspiracy count and the presumptive term of ten (10) years imprisonment for the unlawful transport and/or transfer count to run concurrently. Answer (Doc. 15), Ariz. Superior Ct., Pima County, Order 12/21/2007 (Exh. "B") at 2–3.

### A. *Direct Appeal*

On September 16, 2008, Petitioner filed a Petition for a Delayed Appeal Pursuant to Rule 32.1(f) with the trial court. Answer (Doc. 15), Pet. for a Delayed Appeal 9/16/2008 (Exh. "E"). On September 19, 2008, the trial court granted Petitioner's Petition for a Delayed Appeal. Answer (Doc. 15), Ariz. Superior Ct., Pima County, Order 9/19/2008 (Exh. "F"). On November 16, 2009, Petitioner filed a Request for Amended Sentence; Notice to Court with the trial court. Answer (Doc. 15), Pet.'s Request for Amended Sentence; Notice to Ct. 11/16/2009 (Exh. "H"). Petitioner acknowledged the Court's previous grant of his Petition for a Delayed Appeal, but stated that counsel was unable to file Petitioner's direct appeal because counsel did "not have a contract with Pima County to accept such appointments." *Id.*, Exh. "H" at 1. As such, Petitioner sought amendment of his sentence to time served. *Id.*, Exh. "H" at 2. On November 19, 2009, the trial court issued its Order noting "that counsel need not be appointed appellate counsel in order to file a Notice of Appeal on Petitioner's behalf." Answer (Doc. 15), Ariz. Superior Ct., Pima County, Order 11/19/2009 (Exh. "I") at 1. The trial court granted counsel leave to "file the initial Notice of Appeal and request that appellate counsel be appointed for Petitioner." *Id.*, Exh. "I" at 1.

On February 8, 2010, Petitioner filed his Notice of Appeal. Answer (Doc. 15), Notice of Appeal 2/8/2010 (Exh. "J"). On August 5, 2010, counsel for Petitioner filed an

*Anders*[2] brief with the Arizona Court of Appeals.[3]   Answer (Doc. 15), Appellant's Opening Br. 8/5/2010 (Exh. "K").   On August 9, 2010, the Arizona Court of Appeals granted Petitioner leave to file a *pro se* supplemental brief on or before September 8, 2010.  *Id.*, Ariz. Ct. App. Order 8/9/2010 (Exh. "L").   Petitioner did not file a *pro se* supplemental brief.

On October 27, 2010, the Arizona Court of Appeals dismissed Petitioner's appeal as untimely.  Answer (Doc. 15), Ariz. Ct. App. Order 10/27/2010 (Exh. "M").  Petitioner did not file a motion for reconsideration or petition for review.  *See* Answer (Doc. 15), Ariz. Ct. App. Mandate 1/21/2011 (Exh. "N") at 1.

### B.  Initial Post-Conviction Relief Proceeding

On January 4, 2008, Petitioner filed his Notice of Post-Conviction Relief ("PCR"). Answer (Doc. 15), Not. of PCR 1/4/2008 (Exh. "C").  On November 19, 2008, the Rule

---

[2] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

[3] The Arizona Court of Appeals has described the procedure of filing an *Anders* brief as follows:

> Under our procedure, when appointed counsel determines that a defendant's case discloses no arguable issues for appeal, counsel files an *Anders* brief. The brief contains a detailed factual and procedural history of the case, with citations to the record. *See Scott,* 187 Ariz. at 478 n. 4, 930 P.2d at 555 n. 4. Counsel submits the brief to the court and the defendant. The defendant is then given the opportunity to file a brief *pro per.* After receiving all briefing, the court reviews the entire record for reversible error. If any arguable issue presents itself, the court directs appointed counsel to brief the issue. Only after the court has ascertained that counsel has conscientiously performed his or her duty to review the record, and has itself reviewed the record for reversible error and found none, will the court allow counsel to withdraw. *See State v. Shattuck,* 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). We conclude that this procedure permits counsel to perform ethically, while simultaneously ensuring that an indigent defendant's constitutional rights to due process, equal protection, and effective assistance of counsel are protected.

*State v. Clark*, 196 Ariz. 530, 537, 2 P.3d 89, 96 (Ct. App. 1999).

32 court stayed the pending Rule 32 proceedings in light of having granted his request for a delayed appeal.  *See* Answer (Doc. 15), Ariz. Superior Ct., Pima County, Order 11/19/2008 (Exh. "G").  On February 3, 2011, Petitioner filed a Request to Reinstate Rule 32 Proceedings.  Answer (Doc. 15), Pet.'s Request to Reinstate Rule 32 Proceedings 2/3/2011 (Exh. "O").  The Rule 32 court granted Petitioner's request and ordered that Petitioner file his PCR petition on or before April 5, 2011.  Answer (Doc. 15), Ariz. Superior Ct., Pima County, Order 2/7/2011 (Exh. "P").

On April 5, 2011, Petitioner filed his Petition for Post Conviction Relief.  Answer (Doc. 15), Pet. for PCR (Exh. "Q").  Petitioner asserted three (3) grounds for relief: "1) defense counsel was ineffective in failing to provide a jury instruction on Petitioner's prior bad acts, 2) defense counsel was ineffective in advising Petitioner with respect to plea negotiations, and 3) Petitioner's sentence is disproportionate to a more culpable co-defendant's prison sentence."  *Id.*, Exh. "Q" at 1.  On July 28, 2011, the Rule 32 court held an evidentiary hearing.  *See* Answer (Doc. 15), Ariz. Superior Ct., Pima County, Minute Entry 7/28/2011 (Exh. "W") & Hr'g Tr. 7/28/2011 (Doc. 15-12).

On August 1, 2011, the trial court denied Petitioner's PCR petition.  *See* Answer (Doc. 15), Ariz. Superior Ct., Pima County, Under Advisement Ruling, Rule 32 Petition 8/1/2011 (Exh. "X").  The trial court recognized that "[t]o prove ineffective assistance of counsel, a defendant must show that counsel's representation fell below the standard of care in the profession, and that defendant was prejudiced by counsel's defective performance."  *Id.*, Exh. "X" at 1 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *State v. Rodriguez*, 227 Ariz. 58 ¶ 7, 251 P.3d 1045, 1046–47 (Ct. App. 2010)).

The Rule 32 court further stated that "[t]o reverse a conviction based on ineffective assistance of counsel, a defendant must establish that counsel's actions were unreasonable in that they fell below the threshold of what minimally competent counsel would do, and that but for counsel's unprofessional performance, the outcome of the case would have been different." *Id.*, Exh. "X" at 1–2 (citations omitted).

With regard to counsel's alleged failure to seek a jury instruction limiting Loya's testimony, the Rule 32 court found that counsel's strategic decision not to seek such an instruction, because of a concern that it might "draw attention to or emphasize the importance of unfavorable testimony" was within counsel's discretion and insufficient to sustain a finding of ineffective assistance of counsel. Answer (Doc. 15), Exh. "X" at 2. The Rule 32 court further noted that "[e]ven if failing to request the limiting instruction fell below reasonable professional standards, . . . Defendant has not shown that, but for this error, the outcome of his trial would have been different." *Id.*, Exh. "X" at 2. Regarding plea negotiations, the Rule 32 court found that the record did not support a finding of ineffective assistance of counsel. *Id.*, Exh. "X" at 2–3. The Rule 32 court held that Defendant understood the terms of the State's second and final plea offer and noted "that Defendant's real issue [was] his strong feeling that a better plea agreement should have been offered." *Id.*, Exh. "X" at 2–3. The Rule 32 court also found that counsel's decision not to call Petitioner's brother Carlos as a witness was a strategic decision that could not "be said to constitute ineffective assistance of counsel." *Id.*, Exh. "X" at 3 (citations omitted). Regarding Defendant's claim that his sentence should not have exceeded that given to co-defendant Lorenzo Sanchez, the Rule 32 court stated that this

issue could and should have been raised on direct appeal.  Answer (Doc. 15), Exh. "X" at 3.  The Rule 32 court further noted that Petitioner was given the presumptive sentence, which was well within the Judge's discretion and not subject to modification unless it was clearly excessive.  *Id.*, Exh. "X" at 3–4.  The Rule 32 court also acknowledged that Sanchez was sentenced following a guilty plea, was not convicted of participating in the drug conspiracy, and did not have a prior felony conviction.  *Id.*, Exh. "X" at 4.  As such, the Rule 32 court found that Petitioner was "not entitled to relief based on any disparity in sentence with co-defendant Sanchez."  *Id.*, Exh. "X" at 4.

On December 16, 2011, Petitioner filed his Petition for Review in the Arizona Court of Appeals.  *See* Answer (Doc. 15), Pet. for Review 12/16/2011 (Exh. "Y").  On March 8, 2012, the Arizona Court of Appeals granted review, but denied relief.  Answer (Doc. 15), Ariz. Ct. App. Mem. Decision 3/8/2012 (Exh. "Z").  The court of appeals considered Petitioner's claims of ineffective assistance of counsel due to an alleged failure not to seek a limiting instruction, noting that "Arvizu suggests that, because any limiting instruction would have been given well after the evidence had been admitted and would not have listed the evidence specifically, the failure to request the instruction as not a reasoned choice."  *Id.*, Exh. "Z" at 4.  The court of appeals found that "Arvizu cites no authority or evidence supporting his assertion or suggesting the court was incorrect."  *Id.*, Exh. "X" at 4.  Regarding the Petitioner's refusal of the state's plea offer based on a belief that a particular witness would be called, the court of appeals stated that "it was the trial court's duty to resolve conflicts in the evidence, and we will not disturb its conclusions absent clear error.  *Id.*, Exh. "Z" at 4 (citations omitted).  The court of

appeals did not find clear error with regard to the trial court's findings. *Id.*, Exh. "Z" at 4. Regarding Petitioner's contention that his sentencing claim was not precluded because he did not have a direct appeal, the court of appeals found that "Arvizu cites no authority, and we find none, suggesting the preclusive effect of Rule 32.2. does not apply to a defendant who has not exercised his right to an appeal." Answer (Doc. 15), Exh. "Z" at 4–5. Accordingly, the court of appeals held that "[t]he trial court did not err in finding this claim precluded." *Id.*, Exh. "Z" at 5.

On April 7, 2012, Petitioner sought review of the denial of his PCR petition by the Arizona Supreme Court. *See* Answer (Doc. 15), Pet. for Further Review 4/17/2012 (Exh. "AA"). On June 20, 2012, the Arizona Supreme Court denied review without comment. Answer (Doc. 15), Ariz. Supreme Ct. ME 6/20/2012 (Exh. "BB").

### C. The Instant Habeas Proceeding

On February 19, 2013, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1). Petitioner claims five (5) grounds for relief. First, Petitioner alleges that "Defense Counsel at trial was ineffective in failing to provide a Jury [sic] instruction on Petitioner's prior bad acts[.]" Petition (Doc. 1) at 43. Second, Petitioner alleges that "Defense Counsel was ineffective in advising Petitioner with respect to plea negotiations, and effectively explain [sic] plea that was being offered to defendant." *Id.* at 44. Third, Petitioner claims that his "sentence is disproportionate to a more culpable co-defendant's prison sentence." *Id.* at 47. Fourth, Petitioner asserts that "Defense Counsel was ineffective and negligent in representing Petitioner with Defense Counsel's defense, at

trial." Petition (Doc. 1) at 48. Petitioner argues that the defense that he "never sold meth, but instead bought drugs from state's witness, Loya, this [sic] very defense finds Petitioner guilty of the transfer of drugs." *Id.* Subsumed within this claim, Petitioner also asserts that he "was under a lot of stress, depressed and taking 4 different medications; [sic] Remoron [sic], Celexa, Doxipin [sic] and thorsin [sic], the side effect [of] these medications diminished Petitioner's ability to participate adequetly [sic] in trial" in violation of his Due Process rights pursuant to the Fifth Amendment. *Id.* at 49. Fifth, Petitioner alleges ineffective assistance of counsel based upon his post-conviction relief counsel's failure to file a timely appeal." *Id.* at 54. On December 23, 2013, Respondents filed their Answer (Doc. 15). Petitioner did not file a reply.

## II.    STANDARD OF REVIEW

### A.  *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States.*" 28 U.S.C. § 2254(a) (emphasis added). Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  Correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).  Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] which demands that state-court decisions be given the benefit of the doubt."  *Pinholster*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013).  Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)).  Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).  Such a determination is unreasonable where a state court properly identifies the governing legal principles

delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 134 S.Ct. at 10 (quoting *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786–87) (alterations in original).

### B.  Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts.  28 U.S.C. § 2254(b)(1)(A).  This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."  *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).  As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed. 2d 64 (2004) (internal quotations omitted).  Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Rose*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal citations omitted).  This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already

1   cognizant of the litigation, have had an opportunity to pass upon the matter."  *Id.* (quoting

2   *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

3          Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long

4   as the applicant "has the right under the law of the State to raise, by any available

5   procedure the question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has

6   been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*

7   *v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  The fair

8   presentation requirement mandates that a state prisoner must alert the state court "to the

9   presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting

10  the state court to read beyond the four corners of the petition is insufficient.  *Baldwin v.*

11  *Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting

12  petitioner's assertion that his claim had been "fairly presented" because his brief in the

13  state appeals court did not indicate that "he was complaining about a violation of federal

14  law" and the justices having the opportunity to read a lower court decision addressing the

15  federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999)

16  (holding that petitioner failed to exhaust federal due process issue in state court because

17  petitioner presented claim in state court only on state grounds).  Furthermore, in order to

18  "fairly present" one's claims, the prisoner must do so "in each appropriate state court."

19  *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.  "Generally, a petitioner satisfies the

20  exhaustion requirement if he properly pursues a claim (1) throughout the entire direct

21  appellate process of the state, or (2) throughout one entire judicial postconviction process

22  available in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting

Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C. Procedural Default

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 650 (1991). Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at 2254. This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted). Such claims are considered procedurally barred from review. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

1
2
3
4
5
6
7
8
9
10
11
12

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law.  In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted).  Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default.  *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005).  Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways.  First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds.  *Coleman*, 501 U.S. at 728, 111 S.Ct. at 2254.  Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."  *Id.*  Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted).  Thus, the federal court "must consider whether the claim could be pursued by any *presently*

*available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations omitted).

Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982)). "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862. Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3). "if an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly,

- 18 -

voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt.  Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## III.   STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).   The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Arvizu's petition. The Court has independently reviewed the record and finds that the Petition (Doc. 1) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.    ANALYSIS

### A.    *Grounds One, Two, Four (Part 1), and Five:  Ineffective Assistance of Counsel*

#### 1.  Legal Standards

For cases which have been fairly presented to the State court, the Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Petitioner must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Petitioner must show that this performance prejudiced his defense. *Id.* Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective

hinges on its reasonableness under prevailing professional norms.  *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims).  The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial.  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting *Strickland*, 466 at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citations omitted).  Judging counsel's performance must be made without the influence of hindsight.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).  Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim.  *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.  "[T]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Gentry v. Sinclair*, 705

F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788) (alterations in original).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  Accordingly, "[w]e apply the doubly deferential standard to review the state court's 'last reasoned decision.'"  *Vega v. Ryan*, 757 F.3d 960, 966 (9th Cir. 2014) (citations omitted).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in 2254(d)(1) and (d)(2)."  *Harrington*, 131 U.S. at 98, 131 S.Ct. at 784.  As such, Petitioner also bears the burden of showing that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 698–99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002); *see also*  28 U.S.C. § 2254(d).

## 2.  Ground One: Failure to Request a Limiting Instruction

Petitioner claims that his trial counsel was ineffective "in failing to provide a Jury [sic] instruction on Petitioner's prior bad acts[.]"  Petition (Doc. 1) at 43.  Petitioner asserts that "Patricia Loya's testimony regarding Petitioner selling drugs to her in the past and on several occasions was prejudicial to Petitioner."  *Id.*  Petitioner argues that the jury "might conclude from the testimony that Petitioner was involved in the drug transaction on 11/7/06[.]"  *Id.*  Petitioner acknowledges that defense counsel "filed a motion *in limine* to prevent such testimony[,]" but the trial court denied the motion.  *Id.* Petitioner alleges that defense counsel "failed" to file a jury instruction, "and therefore, Loya's prejudicial testimony went unabated before the Jury [sic]."  *Id.*  Petitioner asserts

that "[t]here is no reasoned basis for trial counsel's failure to request a limiting instruction[,] [and] [t]he fact that defense counsel didn't want to draw attention to testimony doesn't suffice as a reasoned basis." Petition (Doc. 1) at 43.

The Rule 32 court stated that "[t]o prove ineffective assistance of counsel, a defendant must show that counsel's representation fell below the standard of care in the profession, and that defendant was prejudiced by counsel's defective performance." Answer (Doc. 15), Ariz. Superior Ct., Pima County, Under Advisement Ruling, Rule 32 Petition 8/1/2011 (Exh. "X") at 1–2 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Rodriguez*, 227 Ariz. 58 ¶ 7, 251 P.3d 1045, 1046–47 (Ct. App. 2010)). The Rule 32 court acknowledged that "there are good reasons why an attorney might decide that the instruction should not be requested; for example, it may draw attention to or emphasize the importance of unfavorable testimony." *Id.*, Exh. "X" at 2. The Rule 32 court went on to state that "[i]n this case, counsel testified that this was, in fact, the reason he did not submit the instruction, and stated that his was a strategic decision." *Id.*, Exh. "X" at 2. As such, the Rule 32 court held that "[s]uch decisions are within the discretion of counsel and do not provide grounds for finding ineffective assistance of counsel." *Id.*, Exh. "X" at 2. The Rule 32 court also noted that:

> Even if failing to request the limiting instruction fell below reasonable professional standards, however, Defendant has not shown that, but for this error, the outcome of his trial would have been different. In this case, the contested evidence was properly considered by the jury for allowable purposes, including the relationship between Defendant and witness Loya with respect to methamphetamine purchase and sale, and Defendant's understanding of the nature of the transaction occurring at the time of the offense. Furthermore, even without this testimony there was ample evidence supporting Defendant's conviction. Under the circumstances it is

highly unlikely that the limiting instruction would have affected the outcome of the trial.

*Id.*, Exh. "X" at 2.

The Arizona Court of Appeals granted review, but denied relief. *See* Answer (Doc. 15), Ariz. Ct. App. Mem. Decision 3/8/2012 (Exh. "Z"). The appellate court stated that it would not disturb the lower court's ruling "unless the court clearly ha[d] abused its discretion." *Id.*, Exh. "Z" at 2. Regarding Petitioner's suggestion that "any limiting instruction would have been given well after the evidence had been admitted and would not have listed the evidence specifically, the failure to request the instruction was not a reasoned decision[,]" the court of appeals stated that the Rule 32 court "found otherwise, and Arvizu cites no authority or evidence supporting his assertion or suggesting the court was incorrect." *Id.*, Exh. "Z" at 4. As such, the appellate court denied relief. *Id.*, Exh. "Z" at 5.

Based on the foregoing, this Court finds that the Arizona courts did not unreasonably apply clearly established Federal law or unreasonably determine the facts in light of the evidence presented. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[;] . . . [however,] [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

(citations omitted). In this case, the Rule 32 court held an evidentiary hearing, and defense counsel testified regarding his trial strategy not to seek a limiting instruction. *See* Answer (Doc. 15), Exh. "X" at 2; Hr'g Tr. 7/28/2011 (Doc. 15-12). Petitioner has failed to overcome the strong presumption that this was a reasonable tactical decision and sound trial strategy. *See Strickland*, 466 U.S. at 687–90, 104 S.Ct. at 2064–66. As such, Petitioner's ineffective assistance of counsel claim regarding counsel's alleged failure seek a limiting instruction must fail. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### 3. Ground Two: Plea Negotiations[4]

Petitioner asserts that "Defense Counsel was ineffective in advising Petitioner with

_____

[4] To the extent that there is a second ineffective assistance of counsel claim embedded within this count regarding defense counsel's decision to cancel a status conference without consulting Petitioner, it was never presented to the state courts. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007) ("ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it"). As such, any ineffective assistance of counsel claim regarding the cancellation of a status conference is unexhausted, and would now be precluded. Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court"). Therefore, Petitioner's claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").

respect to plea negotiations, and effectively explain [sic] plea that was being offered to defendant." Petition (Doc. 1) at 44. Petitioner asserts that at a November 5, 2007 hearing before the trial court regarding Petitioner's rejection of the plea agreement, "[a] discussion was had regarding a more favorable plea agreement, which Petitioner understood would be offered." *Id.* Petitioner states that "[a] better plea was never presented to Petitioner[,]" and that defense counsel "felt Petitioner should not accept any plea agreement offered the State." *Id.* Petitioner asserts that during his discussion with defense counsel, counsel "assured Petitioner that he would call the passenger in the vehicle, Carlos Arvizu Petitioner's brother, to testify that Patricia Loya was lying with respect to Petitioner's selling drugs to her." *Id.* Petitioner claims that he was "entitled to make a reasonable informed decision whether to accept or reject a plea offer[,] [and] [his] decision with respect to the plea agreement was . . . based on an empty promise that went unfulfilled." Petitioner (Doc. 1) at 45.

The Rule 32 court, after an evidentiary hearing, held that "[t]he record in this case does not support this second claim." Answer (Doc. 15), Exh. "X" at 2. The Rule 32 court went on to state that "[i]t is clear from Defendant's testimony at the hearing on this Petition, his statement at sentencing, and the discussion of plea negotiations at the pretrial hearing held on November 7, 2007 that Defendant understood the State's second and final plea offer." *Id.*, Exh. "X" at 2. The Rule 32 court declared that "[i]t is further apparent that Defendant's real issue is his strong feeling that a better plea agreement should have been offered." *Id.*, Exh. "X" at 2–3. The Rule 32 court held that "Defendant was not entitled to a particular plea offer, and his decision to go to trial rather than to

accept the available offer does not stem from any failure of effective counsel."  *Id.*, Exh. "X" at 3.  "Similarly, that Defendant, up to the time of trial, may have understood that counsel intended to call Carlos as a witness does not constitute grounds for finding that counsel's actions in this regard improperly influenced Defendant's decision not to accept the State's plea proposal."  *Id.*, Exh. "X" at 3.

The Arizona Court of Appeals granted review, but denied relief.  *See* Answer (Doc. 15), Ariz. Ct. App. Mem. Decision 3/8/2012 (Exh. "Z").  The court of appeals held that "[a]lthough Arvizu points to contradicting evidence, it was the trial court's duty to resolve conflicts in the evidence, and we will not disturb it conclusions absent clear error."  *Id.*, Exh. "Z" at 4.  Because "Arvizu ha[d] identified none[,]" the court of appeals upheld the Rule 32 court's findings.  *Id.*, Exh. "Z" at 4–5.

"The 'Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings.'"  *Missouri v. Frye*, — U.S. —, 132 S.Ct. 1399, 1405, 182 L.Ed.2d 379 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009)).  This Sixth Amendment right extends to the plea-bargaining process.  *Lafler v. Cooper*, — U.S. —, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012); *Frye*, — U.S. —, 132 S.Ct. at 1407–08.  A defendant, however, has no right to be offered a plea[.]"  *Frye*, — U.S. —, 132 S.Ct. at 1410.  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Here, after an evidentiary hearing during which Petitioner and his former counsel

both testified, the Rule 32 court found that Petitioner's claim lacked merit.  The court of appeals affirmed this ruling recognizing the lower court's role to resolve conflicts in the evidence.   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).  Moreover, "Section 2254(d) 'gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court."  *Aiken v. Blodgett*, 921 F.2d 214, 217 (9th Cir. 1990) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983)).  "Where there are two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous."  *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (citing *Amadeo v. Zant*, 486 U.S. 214, 226, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988)).  Petitioner has failed to present any evidence to show that the Arizona court's decision regarding his ineffective assistance claim is contrary to or an unreasonable application of clearly established Supreme Court law or based on an unreasonable determination of the facts.

### 4.  Ground Four–Part 1:  Negligence Regarding Defense

Petitioner claims that "Defense Counsel was ineffective and negligent in representing Petitioner with Defense Counsel's defense[.]"  Petition (Doc. 1) at 48. Petitioner alleges that counsel's "defense was that Petitioner never sold meth, but instead bought drugs from State's witness, Loya, this very defense finds Petitioner guilty of the transfer of drugs."  *Id*.  Respondent asserts that Petitioner did not present this claim to the

state courts.  Answer (Doc. 15) at 11–12.  The Court agrees with Respondent.

As such, the claim is unexhausted, and would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court").  Therefore, Petitioner's claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  As such, Petitioner's claim for ineffective assistance

of counsel based on negligence regarding his defense must fail.

### 5.  Ground Five: PCR Counsel and Lack of Appeal

Petitioner asserts that he "was never given the opportunity to exercise his right to file an appeal[,] . . . [because his] appellate lawyer failed to file appeal [sic] in a timely fashion."  Petition (Doc. 1) at 54.  As outlined in Section I.A., *supra*, Petitioner's PCR counsel filed an out of time Notice of Appeal.  Appellate counsel filed an *Anders* brief, and the Arizona Court of Appeals gave Petitioner leave to file a *pro se* supplemental brief, which Petitioner did not do.  The court of appeals then dismissed the appeal as untimely.

It is undisputed that Petitioner did not raise this claim in the state courts.  Thus, Petitioner failed to "fairly present" this claim "in each appropriate state court[.]" *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.  Moreover, although Rule 32.1(f), Arizona Rules of Criminal Procedure, provides a ground for relief where "[t]he defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part[,]" it does not afford a mechanism to apply the proper test for prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In order to avoid preclusion and fall within the exception, Petitioner is required to assert "meritorious reasons . . . substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner[.]"  Ariz. R. Crim. P. 32.2(b).

Petitioner cannot meet that burden.   As such, Petitioner's claim is "technically" exhausted, and procedurally defaulted. *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.

Furthermore, the Supreme Court of the United States has held that "a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review[.]" *Coleman*, 501 U.S. at 756, 111 S.Ct. at 2568.   The Ninth Circuit Court of Appeals has also observed that "*Martinez* did not create a constitutional right to effective assistance of counsel in PCR proceedings."   *Dickens v. Ryan*, 688 F.3d 1054 (9th Cir. 2012).   "Thus, the claim of ineffective assistance of PCR counsel used to establish cause in the narrow circumstances outlined in *Martinez* is an equitable claim and not a constitutional claim[.]"   *Id.*   As such, any attempt by Petitioner to assert an ineffective assistance of counsel claim regarding his PCR counsel must fail.

## B.      Ground Three:  Disproportionate Sentence

Petitioner asserts that his "sentence is disproportionate to a more culpable co-defendant's prison sentence."  Petition (Doc. 1) at 47.  Although Petitioner presented this claim to each state court, he did not raise it as a violation of his *federal* Constitutional rights.  *See* Answer (Doc. 15), Pet. for PCR (Exh. "Q") at 13–14; Answer (Doc. 15), Pet. for Review (Exh. "Y") at 18–20; Answer (Doc. 15), Pet. for Further Review (Exh. "AA") at 16–20.

The fair presentation requirement  mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is

insufficient.  *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).   As such, Petitioner's claim is "technically" exhausted, and procedurally defaulted. *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.

### C.      *Ground Four–Part 2: Due Process Violation*

Petitioner asserts that he "was under a lot of stress, depressed and taking 4 different medications; [sic] Remoron [sic], Celexa, Doxipin [sic] and Thorsin [sic], the side effects of these medications diminished Petitioner's ability to participate adequatly [sic] in trial" in violation of his "due process rights under Fifth [sic] Amendment of U.S. [sic] Constitution."  Petition (Doc. 1) at 49.

The Court finds that Petitioner did not "fairly present" this claim to the Arizona state courts.  *See Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due

process issue in state court because petitioner presented claim in state court only on state grounds).  "Fair presentation" requires alerting "each appropriate state court" to the presence of a federal claim, which Petitioner failed to do.  *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.  As such, the claim is unexhausted, and would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3).  Therefore, Petitioner's claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claim has been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  As such, Petitioner's habeas claim must fail.

### D.     Conclusion

In light of the foregoing, the Court finds that Petitioner's habeas claims are without merit, and the Petition (Doc. 1) shall be denied.

## V.     RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1);

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number:  **CV-13-0102-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 10th day of February, 2016.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge